**In the Interest of S.P., et al., Children.**

**No. 05–03–00905–CV.**

Court of Appeals of Texas,
Dallas.

May 26, 2005.

Rehearing Overruled Aug. 5, 2005.

Douglas R. Dunn, Dallas, for ad litem.

Rhonda F. Hunter, Dallas, Dean M. Swanda, Arlington, for Appellant.

William T. (Bill) Hill, Jr., Dallas, for Appellee.

J. Darlene Ewing, Law Offices of J. Darlene Ewing, Dallas, for Respondent.

Cheryl D. Holder, Asst. Dist. Atty., Dallas, for State.

Before Justices MOSELEY, O'NEILL, and RICHTER.

## OPINION NUNC PRO TUNC

Opinion by Justice MOSELEY.

On our own motion, we issue this opinion nunc pro tunc to correct a clerical error in our May 24, 2005 opinion. This is now the opinion of the Court.

Based on the jury's verdict, the trial court entered a judgment terminating the parental rights of Katrina Palmo (Mother) and Charles Anthony Gray (Father) to their five minor children, S.P., S.G., M.G., S.P., and M.G. Mother and Father appeal. As set forth herein, we conclude that the Texas Family Code requirement that appellants file a statement of points on appeal within fifteen days of the final order is not jurisdictional, and thus any failure to include issues in that filing does not waive them on appeal. *See* TEX. FAM.CODE ANN. § 263.405(b) (Vernon 2002). We further conclude that the evidence is legally sufficient to show Mother engaged in a course of conduct which had the effect of endangering M.G.'s physical or emotional well-being. We also conclude that the return of a favorable home study for an out-of-state relative does not require temporary placement with that relative, and that the trial court did not abuse its discretion in denying Father's motion for temporary placement.

However, we also conclude the trial court abused its discretion in admitting the videotaped statement of a minor child (the couple's niece) in lieu of her testimony because there was no evidence that use of the statement in lieu of live testimony was necessary to protect her welfare. Therefore, we reverse the trial court's judgment and remand for further proceedings.

### BACKGROUND

Mother, Father, and their four children lived in the same apartment. In December, 2001, Mother's minor niece, D.H., made an outcry statement alleging Father (i.e. the father of the children at issue here) had sexually abused her. The next day, the Department of Protective and Regulatory Services (the "Department") removed the four older children from the home. A month later, shortly after the birth of the couple's fifth child, M.G., the Department removed him from the hospital. The Department was appointed temporary managing conservator for all of the children. The Department moved to terminate the parental rights of both parents as to all five children.

At trial, the jury heard evidence that the Department had removed the four older children twice before, once when one child had been severely scalded by Father, who claimed he was in a hurry to bathe the child and did not realize the water was too hot, and once when Mother had a mental "breakdown" and reported that her oldest child had been sexually abused by her sister's boyfriend. The children were later returned against the Department's recommendation after their parents had completed required family services, including domestic abuse counseling. The jury also saw the videotaped statement of D.H., the couple's niece, which was admitted in lieu of her live testimony and without giving Mother or Father the opportunity to cross-examine her. The jury also heard other evidence that will be detailed herein.

Over the parents' objections, the case was submitted to the jury on an unusual jury charge. The jury was asked two questions concerning each parent-child relationship—for a total of twenty questions. Every question was in the following form: "Should the parent-child relationship between [the parent] and [the child] be terminated based on the instruction for [that Question]?" Thus, all twenty questions were identical except for the reference to the parent, the child, and the applicable instruction.[1] In other words, rather than submitting questions that inquired directly as to the findings that must be made to support the Department's claims for terminating each parent-child relationship, the trial court asked the same question twenty times and varied the instructions in an attempt to direct each question to the findings that must be made in order to terminate each parent-child relationship.

By an eleven to one vote, the jury answered "yes" to all twenty questions. Based on the jury verdict, the trial court entered a judgment terminating the parent-child relationships of both Mother and Father as to each of the children. Mother and Father appeal.

### STATEMENT OF POINTS ON APPEAL

■ The Department argues that Mother and Father did not preserve error concerning some of their specific complaints because those complaints were not included in their statement of points on appeal. *See* TEX. FAM.CODE ANN. § 263.405(b) (providing for filing of statement of points on appeal within 15 days of final order). We disagree.

The legislature's intent in enacting section 263.405(b) was to "provide a mechanism to reduce frivolous parental-termination appeals and to reduce post-judgment appellate delays in parental-termination appeals." *In re S.J.G.*, 124 S.W.3d 237, 242 (Tex.App.-Fort Worth 2003, pet. denied). Requiring a statement of points on appeal within fifteen days of the final order allows the trial court to make a determination of whether the appeal is frivolous as required by section 263.405(d). *Id.* The purpose is not to create an additional preservation requirement for error that has already been preserved.

■ We conclude the statement of points on appeal required by section 263.405(b) is not jurisdictional and is not an additional requirement for preserving error in parental-rights termination cases. *See In re W.J.H.*, 111 S.W.3d 707, 712–13 (Tex.App.-Fort Worth 2003, pet. denied). Thus Mother and Father have not waived

---

1. The form of instruction for the first question concerning each parent-child relationship was as follows:

In answering [the first question], you are instructed that you must answer [the first question] "No" unless you find by clear and convincing evidence that [the parent] has knowingly placed or knowingly allowed [the child] to remain in conditions or surroundings which endangered the physical or emotional well-being of [the child], or, you find by clear and convincing evidence that [the parent] has engaged in conduct, or knowingly placed [the child] with persons who engaged in conduct, which endangered the physical or emotional well-being of [the

child]. Otherwise, you must answer [the first question] "Yes."

The court conditioned the second question concerning each parent-child relationship upon an affirmative answer to the first question, and then instructed the jury concerning the second question as follows:

In answering [the second question], you are instructed that you must answer [the second question] "no" unless you find by clear and convincing evidence that termination of the parent-child relationship between [the parent] and [the child] is in the child's best interest. Otherwise, you must answer [the second question] "Yes."

or forfeited any issues by not including them in their statements of points on appeal.

## Legal Sufficiency of the Evidence (As to Termination of Mother's Parental Rights to M.G.)

The trial court denied Mother's motion for directed verdict and motion for judgment notwithstanding the verdict raising the legal sufficiency of the evidence to support the termination of her parental rights to her youngest child, M.G. In issues twenty and twenty-one, Mother argues the evidence is legally insufficient to support the termination of her parental rights to M.G. Mother argues that family code subsections 161.001(1)(D) and 161.001(1)(E) do not authorize termination based on evidence of Mother's conduct toward other children, but only on conduct toward the specific child at issue. On appeal Mother challenges the legal sufficiency of the evidence to support the endangerment finding,[2] arguing that M.G. was removed from her at the hospital just days after his birth and never lived with her in the home. We address this issue because, if sustained, Mother would be entitled to reversal and rendition of the Department's claim seeking to terminate her parental rights as to M.G. *See Glover v. Tex. Gen. Indem. Co.,* 619 S.W.2d 400, 401 (Tex.1981) (per curiam); *Exxon Corp. v. Breezevale Ltd.,* 82 S.W.3d 429, 438 (Tex.App.-Dallas 2002, pet. denied).

▆ Involuntary termination of parental rights implicates fundamental constitutional rights. *See Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *In re G.M.,* 596 S.W.2d 846, 846 (Tex.1980). A trial court may order involuntary termination of pa-

rental rights if the factfinder finds by clear and convincing evidence (1) the parent has committed one of the enumerated statutory conditions, and (2) termination is in the best interest of the child. Tex. Fam.Code Ann. § 161.001 (Vernon 2002). Each required finding must be based on clear and convincing evidence. *Id.* § 161.206(a). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007. This level of certainty is necessary to preserve the fundamental fairness in government-initiated proceedings that threaten to end a natural parent's desire for and right to companionship, care, custody, and management of his or her children. *See Santosky v. Kramer,* 455 U.S. 745, 756–59, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). "A parent's interest in the accuracy and justice of the decision to terminate his or her parental status is, therefore, a commanding one." *Id.* (quoting *Lassiter v. Dep't of Soc. Servs.,* 452 U.S. 18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981)).

▆ When we review the legal sufficiency of the evidence in a parental-rights termination case, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the matter on which the Department bears the burden of proof. *In re J.F.C.,* 96 S.W.3d 256, 265–66 (Tex. 2002); *Wilson v. State,* 116 S.W.3d 923, 928 (Tex.App.-Dallas 2003, no pet.). In a legal sufficiency review, we look at all the evidence in the light most favorable to the finding; we assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so; and

---

**2.** Mother does not challenge any finding that termination of her rights would be in the best interest of M.G.

we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *In re J.F.C.*, 96 S.W.3d at 266. We do not, however, disregard undisputed evidence that does not support the finding. *Id.*

▇▇▇ Here, the Department alleged grounds for termination under family code subsections 161.001(1)(D) (i.e. endangering conditions or surroundings) and 161.001(1)(E) (i.e. endangering conduct). *See* TEX. FAM.CODE ANN. §§ 161.001(1)(D), (E) (Vernon 2002). Subsection 161.001(1)(D) requires clear and convincing evidence that the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." *Id.* § 161.001(1)(D). This subsection refers only to the acceptability of the child's living conditions. *See In re S.H.A.*, 728 S.W.2d 73, 84 (Tex.App.-Dallas 1987, writ ref'd n.r.e.). Subsection 161.001(1)(E) requires clear and convincing evidence that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM.CODE ANN. § 161.001(1)(E). This subsection refers only to the parent's conduct, as evidenced not only by the parent's acts, but also by the parent's omissions or failures to act. *In re S.H.A.*, 728 S.W.2d at 85. The Department need only prove one of the subsections in order to satisfy the first requirement of section 161.001. *Wilson*, 116 S.W.3d at 928. We first address the evidence as to subsection 161.001(1)(E) (i.e. endangering conduct).

▇▇▇ Mother argues that the endangerment finding can only be supported by evidence of her conduct toward the child to whom her parental rights are to be terminated, that is, M.G. However, in *Texas Department of Human Services v. Boyd*, 727 S.W.2d 531 (Tex.1987), the Texas Supreme Court rejected a similar argument that "danger cannot be inferred from parental misconduct." *Id.* at 533. *Boyd* specifically held that although " 'endanger' means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury." *Id.* This court has also rejected the argument that conduct before the child at issue was born cannot be considered as endangering that child:

> The father argued to the trial court that the abuse of his oldest son could not endanger C.B. because it occurred before she was born. "Endanger" under section 15.02 means to expose to loss or injury, or to jeopardize. *See Texas Dep't of Human Services v. Boyd*, 727 S.W.2d 531, 533 (Tex.1987). It is not necessary that the conduct be directed at the child or that the child actually suffer injury. *Id.* Section 15.02(1)(E) does not require actual and concrete threat of injury to the child's emotional and physical well-being. *Id.* If the evidence shows a course of conduct which has the effect of endangering the child's physical or emotional well-being, then a finding under section 15.02(1)(E) is supportable. *Id.* at 534.

*Dallas County Child Protective Servs. v. Bowling*, 833 S.W.2d 730, 732–33 (Tex. App.-Dallas 1992, no writ). We have consistently held that a parent's conduct both before and after a child is born is relevant to the determination of whether the conduct endangers the child's physical or emotional well-being. *See In re R.F.*, 115 S.W.3d 804, 810 (Tex.App.-Dallas 2003, no pet.); *Dupree v. Tex. Dep't Protective & Regulatory Servs.*, 907 S.W.2d 81, 84 (Tex. App.-Dallas 1995, no writ); *Clark v. Clark,*

705 S.W.2d 218, 219 (Tex.App.-Dallas 1985, writ dism'd).

Mother argues *Boyd* and cases following it are wrongly decided because the statute requires the endangering conduct be directed toward the child that is the subject of the termination proceeding. However, Mother presents no authority or compelling argument to depart from these established decisions.

Mother also argues that interpreting subsections 161.001(1)(D) (i.e. endangering conditions or surroundings) and 161.001(1)(E) (i.e. endangering conduct) to take into consideration circumstances and activities occurring before child's birth renders other subsections of section 161.001(1) superfluous. We disagree. Nothing in the interpretation that parental conduct before and after birth is relevant to subsections 161.001(1)(D) and 161.001(1)(E) renders other subsections superfluous. A subsection is not superfluous merely because it may overlap another subsection in certain cases. Subsections 161.001(1)(L) and 161.001(1)(M) have specific requirements and conditions that do not apply in this case, but would apply in others. *See* TEX. FAM.CODE ANN. §§ 161.001(1)(L), (M).

Thus we reject Mother's argument that the endangerment finding as to M.G. can only be supported by evidence of her conduct toward that child, and look at all the evidence in the record under the appropriate standard of review.

There is evidence in the record that Father choked Mother sometime before the children were first removed and that she called the police to report the domestic violence. According to a Department investigator, Mother confirmed there had been other incidents of domestic violence, but Mother was not concerned about the safety of the children. A caseworker testified that Mother had a history of not taking medications for her mental health conditions, which was dangerous for the children. Another caseworker testified that Mother lacked parenting skills, had problems understanding the needs of her children, and lacked judgment.

There was also evidence of a medical examination of the two oldest girls, S.P. and S.P., approximately eight weeks after the final removal. The pediatric nurse practitioner found excessive redness in the girls' genital areas that made her suspect sexual abuse. One of the girls had what appeared to be a penetrating injury to her genitalia. The nurse practitioner estimated the injuries were six to eight weeks' old. Although she admitted the redness could have been caused by an infection or non-sexual trauma, the nurse practitioner believed the children had been molested.

The evidence was disputed as to whether Mother knew of past alleged sexual abuse by Father of D.H. and yet continued to allow him to have access to the children. A Department investigator testified Mother told him she believed Father had touched D.H. sometime in the past, but not at the time of D.H.'s outcry. The investigator said Mother told him she had seen Father tickling the children in the past, had stopped him, and talked with D.H. afterwards.

Mother denied that D.H. ever told her about Father's alleged abuse and denied knowing about any allegations of abuse against him. Mother testified that when D.H. was five, Mother talked with D.H. about inappropriate touching after a "tickling" episode with Father. Mother admitted that the night before the last removal, when Father had been arrested for traffic violations, D.H.'s mother told Mother a long story about Father abusing D.H., but Mother said the story did not make sense, she did not understand it, and did not

know if it were true. Mother also testified she did not believe that allowing Father back into the home would endanger her children.

There was also undisputed evidence that Mother completed the Department's required services after the each of the first two removals. Mother testified that on the day of the last removal, Father was released from jail and only spent a few hours at home before the Department removed the children and that he was never alone with the children. It was also undisputed that Langston conducted a forensic interview with the oldest child, S.P., and the results of the interview did not concern her.

After reviewing all the evidence in the light most favorable to the jury's findings, and considering the disputed facts the jury could reasonably have resolved in favor of the findings, we conclude that a factfinder could reasonably form a firm belief or conviction that Mother engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical or emotional well-being of M.G. TEX. FAM.CODE ANN. § 161.001(1)(E); *In re J.F.C.*, 96 S.W.3d at 265–66. Because the evidence is legally sufficient to support the jury's finding under subsection 161.001(1)(E), we need not discuss the sufficiency of the evidence under subsection 161.001(1)(D). *Wilson*, 116 S.W.3d at 928. We resolve Mother's legal sufficiency issues against her.

### ADMISSIBILITY OF VIDEOTAPED STATEMENT

Mother's first and second issues and Father's second and third points of error challenge the trial court's admission of the videotape interview of their niece, D.H., and its refusal to require the Department to produce D.H. for cross-examination. In the videotaped interview, D.H., who was seven-years-old at the time, identified as "bad touches" when her uncle (Father) would "get on top of her" and when he was "touching on her." She said this happened more than one time, but had difficulty identifying the last time it happened. D.H. said that one time she told Mother, her aunt, that Father was touching her and Mother got angry with Father. D.H. said she saw Father touching S.P. the same night he touched her, but then said she did not see it because the lights were off.

Section 104.006 of the family code allows admission of a statement of a child twelve years old or younger describing alleged abuse of the child if the trial court finds the statement reliable and the child testifies or is available to testify or if the court finds that use of the statement in lieu of the child's testimony is necessary to protect the child's welfare. *See* TEX. FAM. CODE ANN. § 104.006 (Vernon 2002). Another section of the family code allows admission of a video-recorded oral statement of a child twelve years old or younger who is alleged in a suit affecting the parent-child relationship to have been abused if certain conditions are satisfied. *Id.* § 104.002. Mother and Father challenge the constitutionality of these statutes based on the right of a criminal defendant to confront the witnesses against him.[3]

The Supreme Court recently revised its confrontation clause jurisprudence and concluded (1) the principal evil targeted by the confrontation clause was the civil law's historic practice of using ex parte examinations as evidence against the accused, and (2) the Framers would not have permitted out-of-court testimonial statements to be admitted in evidence against the accused

---

3. "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." U.S. CONST. amend. VI.

unless the witness was unavailable and the defendant had had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 1363, 1365, 158 L.Ed.2d 177 (2004). The Court held that "[w]here testimonial evidence is at issue ... the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id.*, 541 U.S. 36, 124 S.Ct. at 1374. Previously, the Court had stated that a hearsay statement "is admissible only if it bears adequate 'indicia of reliability.'" *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). Reliability, inturn, could be inferred without more in a case where the evidence fell within a firmly rooted hearsay exception. *Id.* "In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." *Id.*

In *Crawford*, the Court reasoned that the *Roberts* test departed from the historical principles of the confrontation clause in two ways: first, it was too broad in applying the same mode of analysis whether or not the out-of-court statement was testimonial or not; and second, it was too narrow in admitting statements consisting of ex parte testimony based on a mere finding of reliability. *Crawford*, 541 U.S. 36, 124 S.Ct. at 1369. The Court did not establish a comprehensive definition of testimonial statements, but stated "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* 541 U.S. 36, 124 S.Ct. at 1374. "Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Id.*

Some courts have refused to consider confrontation clause challenges in suits affecting the parent-child relationship because the proceedings are civil and not criminal.[4] Other courts have recognized that the right of cross-examination is normally part of the meaningful hearing requirement inherent in principles of due process and due course of law.[5] Procedural due process, however, is a flexible con-

4. *See Ochs v. Martinez*, 789 S.W.2d 949, 951 (Tex.App.-San Antonio 1990, writ denied) (refusing to consider 6th amendment confrontation challenge to predecessor of family code § 104.002 in civil suit seeking to modify managing conservatorship of child). *See also In re C.W.*, 65 S.W.3d 353, 354 (Tex.App.-Beaumont 2001, no pet.) (stating no 6th amendment right of confrontation in termination of parental rights case), *overruled on other grounds by In re Z.L.T.*, 124 S.W.3d 163, 166 (Tex.2003); *In re R.V.*, 977 S.W.2d 777, 781–82 (Tex.App.-Fort Worth 1998, no pet.) (citing *Ochs* and holding criminal confession law does not apply to civil termination case); *Tex. Dep't of Pub. Safety v. Duggin*, 962 S.W.2d 76, 81 (Tex.App.-Houston [1st Dist.] no pet.) (citing *Ochs* and holding confrontation clause did not apply in civil driver's license suspension case).

5. *See Goldberg v. Kelly*, 397 U.S. 254, 269, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) ("In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses."); *Davidson v. Great Nat'l Life Ins. Co.*, 737 S.W.2d 312, 314 (Tex.1987) ("Due process requires an opportunity to confront and cross-examine adverse witnesses."). The Texas Supreme Court emphasizes that "[c]ross-examination is a safeguard essential to a fair trial and a cornerstone in the quest for truth." *Davidson*, 737 S.W.2d at 314; *see Perry v. Del Rio*, 67 S.W.3d 85, 92 (Tex.2001) ("We have recognized that our due course of law provision at a minimum requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner.... This right [to be heard] also includes an opportunity to cross-examine witnesses, to produce witnesses, and to be heard on questions of law.").

cept, and what process is due in any particular case depends on a consideration of several factors. *See In re M.S.*, 115 S.W.3d 534, 547–49 (Tex.2003) (rule governing preservation of factual sufficiency complaint satisfies due process and counsel's unjustified failure to preserve error may be ineffective assistance of counsel); *In re B.L.D.*, 113 S.W.3d 340, 351–54 (Tex. 2003) (requiring preservation of error in parental termination case satisfies due process); *In re J.F.C.*, 96 S.W.3d at 272–74 (using deemed findings to support judgment in parental termination case satisfies due process).

■ Here we need not reach the constitutional issue of whether the right of confrontation or to cross-examination applies in an involuntary termination of parental rights case and whether sections 104.002 and 104.006 violate that right. That is because there was no evidence that use of D.H.'s videotaped interview in lieu of her testimony was necessary to protect D.H.'s welfare. Thus, the trial court abused its discretion in overruling the objections and admitting the videotape in lieu of the child's testimony. *See Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex.2001) (trial court has broad discretion in admitting or excluding evidence).

In a suit affecting the parent-child relationship,

> a statement made by a child 12 years of age or younger that describes alleged abuse against the child, without regard to whether the statement is otherwise inadmissible as hearsay, is admissible as evidence if, in a hearing conducted outside the presence of the jury, the court finds that the time, content, and circumstances of the statement provide sufficient indications of the statement's reliability and:

> (1) the child testifies or is available to testify at the proceeding in court or in any other manner provided for by law; or

> (2) the court determines that the use of the statement in lieu of the child's testimony is necessary to protect the welfare of the child.

TEX. FAM.CODE ANN. § 104.006. This section requires a hearing outside the presence of the jury, at which the trial court is to make several determinations. The trial court must make determinations concerning the reliability of the statement, and, if the child is not available to testify, the statement is admissible only if the trial court determines that use of the statement in lieu of the child's testimony is necessary to protect the child's welfare. *See In re K.L.*, 91 S.W.3d 1, 16 (Tex.App.-Fort Worth 2002, no pet.) (requirements of § 104.006 are mandatory).

Here the trial court conducted a hearing outside the presence of the jury regarding the parents' objections to the admissibility of the videotape. The Department indicated that the whereabouts of D.H. were known, but did not offer to make her available to testify. Mother and Father requested the child be made available for cross-examination, but the trial court pointed out that section 104.006 allows the use of the statement in lieu of the child's testimony if doing so is necessary to protect the child's welfare. The trial court questioned whether it could make that determination from viewing the videotape alone and specifically asked if the parties had any evidence that use of the videotape in lieu of D.H.'s testimony was necessary to protect her welfare. Significantly, the Department responded that it had no such evidence, but argued that the child was eight years old and having to face the man who allegedly abused her in open court

would obviously be detrimental to her welfare.

During a break in the proceedings, the trial court viewed the videotape and ruled that consistent with time, content, and circumstances, the statement provided sufficient indications of its reliability. The trial court also stated that he had a seven-year-old daughter and, based on common sense, his knowledge of his own seven-year-old daughter, and after viewing D.H. on the videotape, the court found that use of the statement in lieu of D.H.'s testimony was necessary to protect her welfare.

If D.H. had been available to testify at trial, the trial court could have admitted the statement without a finding that using the statement was necessary to protect her welfare. *See* TEX. FAM.CODE ANN. § 104.006(1). However, there was no evidence that D.H. was available to testify in court or in any other manner provided by law. The Department merely indicated it knew the whereabouts of the child. Moreover, both Mother and Father requested D.H. be made available for cross-examination, but the Department argued that it would be detrimental for D.H. to have to face the man who allegedly abused her. Mother and Father pointed out that D.H. could be protected by allowing her to testify by closed-circuit television, as allowed by section 104.004. *See* TEX. FAM.CODE ANN. § 104.004. The trial court did not follow this procedure and did not require that D.H. be made available despite the parents' requests to do so and Father's request that her whereabouts be disclosed to him. Rather, based on section 104.006(2), the trial court found that the statement could be used in lieu of D.H.'s testimony.

We examine whether the record supports the trial court's finding that use of the statement was necessary to protect the welfare of the child. Neither the Department nor the parents offered any evidence regarding D.H.'s welfare when requested by the trial court. From reviewing the videotape, the trial court learned that D.H. gave her interview just after she turned seven years old. The trial was conducted a year and four months later when D.H. would have been eight years old. The trial court heard no evidence regarding D.H.'s welfare and her ability to testify at the time of trial. The Department had no evidence about her welfare or the need to use the videotape other than her age. The trial court stated it relied on common sense and its knowledge of the judge's own seven-year-old daughter. However, there was no evidence regarding any similarities between the child witness, D.H., and the judge's daughter, or that all seven- or eight-year-old girls will respond in the same manner to testifying at trial regarding alleged sexual abuse. Common sense does not dictate that knowledge of one young child equates to knowledge of the welfare of another young child. There was no evidence of the Department's need to use the statement given its admission that it knew the whereabouts of D.H. Nor was there any evidence of D.H.'s welfare or the need to protect her from testifying in court. Again, D.H. is the niece of Father and Mother, not their child. Thus, the record does not support the trial court's finding that use of the videotape was necessary to protect D.H.'s welfare.

To determine whether it was necessary to use the videotape in lieu of D.H.'s testimony in order to protect her welfare, the trial court should hear evidence regarding the specific child witness, that child's welfare at the time of trial, and the circumstances making it necessary to use the statement rather than the child's testimony in court or by alternative means such as closed circuit television. Here, the trial court failed to hear such evidence. Thus,

we conclude that the trial court abused its discretion in admitting the videotape under section 104.006.

▮▮▮▮▮▮▮ The Department argues that section 104.002 [6] is an alternative basis for admitting D.H.'s videotaped statement, and that this section does not require a finding that use of the statement is necessary to protect the child's welfare. Mother and Father objected at trial, and assert here, that the requirements of section 104.002 had not been met, particularly the requirement that the statements not be made in response to questions calculated to lead the child to a particular response. TEX. FAM.CODE ANN. § 104.002(4); *see Ochs*, 789 S.W.2d at 951.[7] However, even if the requirements of section 104.002 were met, we conclude that section is not an alterna-

tive basis for the trial court's ruling in this case.

Here the trial court not only admitted D.H.'s videotaped statement, it admitted the statement *in lieu of* D.H.'s testimony at trial—denying Mother's and Father's requests that she be made available. Unlike section 104.006, section 104.002 does not authorize the trial court to use the statement *in lieu of* testimony. While section 104.002 may support admission of the videotape statement itself, it does not support the trial court's decision to allow the statement in lieu of the child's testimony. Both parents requested that D.H. be made available and suggested that her testimony could be taken by alternative means, such as closed-circuit television under section 104.004. The trial court refused these requests. Regardless of the admissibility of

---

**6.** If a child 12 years of age or younger is alleged in a suit under this title to have been abused, the recording of an oral statement of the child recorded prior to the proceeding is admissible into evidence if:

(1) no attorney for a party was present when the statement was made;

(2) the recording is both visual and aural and is recorded on film or videotape or by other electronic means;

(3) the recording equipment was capable of making an accurate recording, the operator was competent, and the recording is accurate and has not been altered;

(4) the statement was not made in response to questioning calculated to lead the child to make a particular statement;

(5) each voice on the recording is identified;

(6) the person conducting the interview of the child in the recording is present at the proceeding and available to testify or be cross-examined by either party; and

(7) each party is afforded an opportunity to view the recording before it is offered into evidence.

TEX. FAM.CODE ANN. § 104.002.

**7.** Under section 104.002, questions to the child must be open ended and not suggestive of the response. *Ochs*, 789 S.W.2d at 956; *see also James v. Tex. Dept. of Human Servs.*,

836 S.W.2d 236, 240–41 (Tex.App.-Texarkana 1992, no writ) (videotape should not have been admitted where questioning was generally leading and interviewer's nonverbal communication, active, demonstrative use of dolls, and argumentative refusal to accept undesired answers, contributed to making particular statements); *but see In re W.S.*, 899 S.W.2d 772, 779 (Tex.App.-Fort Worth 1995, no writ) (not error to admit videotape under prior version of section 104.002 where questions were open-ended and did not suggest an answer).

Langston testified that D.H.'s statements were not in response to questions calculated to the lead the child to make a particular statement. We do not have a transcription of the videotape. However, a review of the videotape shows that some of the questions were leading. In adopting section 104.002, the legislature abrogated the common law rule allowing leading questions of child witnesses "insofar as the uncross-examined videotaped testimony of children under the age of 12 is concerned." *Ochs*, 789 S.W.2d at 956. We note the questioning in this case was not as leading as that in *James*, 836 S.W.2d at 240 n. 4, but was similar to that in *Ochs*, 789 S.W.2d at 952–55. However, we need not reach the issue of the admissibility of D.H.'s videotaped statement under section 104.002.

the videotaped statement under section 104.002, that section does not authorize the trial court to admit D.H.'s videotaped statement in lieu of her testimony at trial without requiring the Department to make the child available to testify.

We now consider whether the error in admitting the videotape in lieu of the D.H.'s testimony was harmful. TEX. R.APP. P. 44.1(a). A party complaining of error in the admission or exclusion of evidence need not show that but for the error a different judgment would necessarily result, but must show that the error probably resulted in an improper judgment. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753–54 (Tex.1995); *McCraw v. Maris*, 828 S.W.2d 756, 758 (Tex.1992); *see also* TEX.R.APP. P. 44.1(a). We review the entire record to determine if the error was harmful. *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex.2000). A successful challenge to a trial court's evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted. *See Interstate Northborough P'ship*, 66 S.W.3d at 220.

The allegation of child abuse against Father and Mother's alleged knowledge of the abuse and willingness to allow the children to be with Father were central to the Department's case. Although there was other evidence relating to the alleged endangerment grounds for termination and the best interest factors, the abuse allegations were overriding. The videotape was the primary evidence of abuse on which the case turned. The issue of whether D.H. told Mother (her aunt) of the abuse was disputed. D.H. said in the interview that she had told Mother about the touching and Mother was angry with Father. Mother's denial of this knowledge was seriously undermined by the videotape statement. The Department offered evidence of abuse of the two older daughters six to eight weeks before the nurse's examination. The videotape was critical in relation to this evidence because of D.H.'s statement that she had seen Father touching his oldest daughter, S.P.

Moreover, the powerful impact of videotape on jurors has been recognized. *See Ochs*, 789 S.W.2d at 956 (noting that videotape "makes a more lasting and intense impression on jurors than other forms of proof"). After reviewing the entire record, we conclude the error in admitting the videotape in lieu of D.H.'s testimony probably caused the rendition of an improper judgment. TEX.R.APP. P. 44.1(a). Accordingly, we resolve Mother's first issue in her favor and sustain Father's second point of error.

TEMPORARY PLACEMENT

In his fourth point of error, Father argues the trial court abused its discretion in overruling his motion for temporary and permanent placement of the children with a relative in Georgia. He argues federal law mandates placement with a relative once a favorable home study of the relative is returned. Permanent placement of the children will be determined on remand of this case. We consider only the issue of temporary placement.

The federal statute on which Father relies does not require placement with a relative in all cases once a favorable home study is returned. *See* 42 U.S.C. § 671(a)(19). The statute requires that to be eligible for federal funding, the State must have an approved plan that "provides that the State shall consider giving preference to an adult relative over a non-related caregiver when determining a placement for a child, provided that the relative caregiver meets all relevant State child protection standards." 42 U.S.C. § 671(a)(19).

This statute requires the State in formulating its plan, to consider giving preference to adult relatives; it does not eliminate the trial court's discretion in making temporary placement decisions. The legislature implicitly incorporated the requirements for federal funding in subtitle E of the family code. TEX. FAM.CODE ANN. §§ 261.001–265.003 (Vernon 2002); *see In re N.V.D.*, 102 S.W.3d 268, 270 (Tex.App.-Beaumont 2003, pet. denied). Specifically, family code section 262.201(e) provides that the trial court shall place a child removed by the Department with a relative of the child (where placement with the noncustodial parent is inappropriate) unless such placement would not be in the best interest of the child. TEX. FAM.CODE ANN. § 262.201(e). Thus, the State gives preference to an adult relative over a non-relative if that placement is in the best interest of the child. The overriding consideration in placement of a child is the best interest of the child. TEX. FAM.CODE ANN. § 153.002 (Vernon 2002). The trial court has broad discretion in determining the best interest of the child. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex.1982). Father has not shown the trial court abused its discretion in denying his motion for temporary placement of the children with an out-of-state relative. Father's fourth point of error is overruled to that extent.

### CONCLUSION

We conclude the evidence was legally sufficient to support the endangerment findings as to Mother and M.G. However, we conclude that the trial court abused its discretion in admitting the uncross-examined recorded statement of D.H. in lieu of her testimony and that this error probably caused the rendition of an improper judgment. TEX.R.APP. P. 44.1. We also conclude the trial court did not abuse its discretion in denying Father's motion for temporary placement of the children. Because of our resolution of the issues regarding admission of the videotape, we need not address the remaining issues and points of error, including issues concerning the propriety of the jury charge. TEX. R.APP. P. 47.1. The judgment of the trial court is reversed and this case is remanded to the trial court for further proceedings.