

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00816-CV

**IN THE INTEREST OF A.M.L.**, a Child

From the 38th Judicial District Court, Medina County, Texas
Trial Court No. 12-11-21526-CV
Honorable Thomas F. Lee, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:    Catherine Stone, Chief Justice
Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  May 7, 2014

AFFIRMED

The sole issue presented in this appeal is whether the trial court abused its discretion in admitting into evidence a videotape of the arrest of A.M.L.'s mother, E.A., who is appealing the termination of her parental rights, and the testimony of the arresting officer's supervisor, Captain Frank Reyes, regarding the videotape.  Because error, if any, in the admission of the videotape and Captain Reyes's testimony did not result in harm, we affirm the trial court's judgment.

### STANDARD OF REVIEW

"To obtain reversal of a judgment based on error in the admission or exclusion of evidence, an appellant must show that the trial court's ruling was in error, and the error (1) probably caused the rendition of an improper judgment or (2) probably prevented the appellant from properly presenting the case to the court of appeals." *In re E.A.G.*, 373 S.W.3d 129, 144 (Tex. App.—San

Antonio 2012, pet. denied); TEX. R. APP. P. 44.1. "We review the entire record to determine if the error was harmful." *In re S.P.*, 168 S.W.3d 197, 210 (Tex. App.—Dallas 2005, no pet.). "A successful challenge to a trial court's evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted." *Id.*

## DISCUSSION

A trial court may order termination of the parent-child relationship only if the court finds by clear and convincing evidence one or more statutory grounds for termination and that termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001(1), (2) (West 2014). In this case, a jury found by clear and convincing evidence that E.A. had:

> (D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;
>
> (E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child; and
>
> (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the mother to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

*Id.* at § 161.001(1)(D), (E), (O).

"Endanger 'means to expose to loss or injury, to jeopardize.'" *In re E.A.G.*, 373 S.W.3d at 141 (quoting *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.)). "Although endanger means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the parent's conduct be directed at the child or that the child actually suffers injury." *Id.* "[A] parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct." *In re J.O.A.*, 283 S.W.3d 335, 345 (Tex. 2009).

"Under subsection 161.001(1)(D), the inquiry is related to whether the environment of the children is the source of endangerment to the children's physical or emotional well-being." *In re E.A.G.*, 373 S.W.3d at 141. "It focuses on the suitability of the child's living conditions or surroundings." *Id*. "The inquiry under subsection 161.001(1)(E) relates to whether the endangerment of the child is the direct result of the parent's conduct." *Id*. "Termination under subsection 161.001(1)(E) must be based on not just a single act or omission, but a voluntary, deliberate, and conscious course of conduct by the parent." *Id*.

In her brief, E.A. contends the trial court erred in admitting the videotape showing her performance on the field sobriety tests on the night of her arrest. With regard to the resulting harm, E.A. asserts, "If not but for this err [sic], there would have been no basis for the jury to conclude that [she] engaged in conduct … that endangered A.M.L." E.A. contends "There was no other evidence suggesting that [she] endangered A.M.L. Not that evening, not ever." We disagree.

Karen LaGrange, an investigator for the Department, conducted the initial interview in A.M.L.'s case after E.A. and A.M.L.'s father, G.L., were arrested at a McDonalds in October of 2012 around 1:00 a.m. E.A. was arrested for driving under the influence. A.M.L. was in the car when her parents were arrested. A.M.L. was approximately three-years-old at the time of the trial, which was approximately one year after she was removed by the Department following her parents' arrest.

LaGrange interviewed A.M.L.'s parents at the jail after their arrest. G.L. stated they were arrested after a police officer found pills in the car. G.L. stated E.A. had obtained the pills on a street corner, but he was unsure what type of pills they were. LaGrange testified that E.A. appeared incoherent during the interview and continually fell asleep. E.A. kept saying that she needed to drink her methadone. E.A. told LaGrange the reason she was taking methadone was because she previously had a heroin problem.

Rodger Clark, another investigator for the Department, was assigned A.M.L.'s case after LaGrange conducted the initial interview. Clark stated that before they were arrested, E.A. and G.L. were asleep in the drive-through of the McDonalds with A.M.L. in the car.

E.A. stated that she entered a methadone program to keep her from relapsing and taking heroin after A.M.L. was born. She also admitted to using marijuana a day or two prior to her arrest. E.A. invoked her Fifth Amendment right and refused to answer any questions at trial regarding the night of her arrest. Initially, E.A. stated that she had been trying to detox from methadone for three years; however, she later stated that she began detoxing in December of 2012. E.A. admitted that she decided to stop taking her methadone two times in the three months preceding trial, resulting in her going to the hospital. E.A. was told to continue taking the methadone because detoxing is a slow process. At the time of trial, E.A. was taking 30 milligrams of methadone daily.

Alice Castleberry, a licensed psychologist, performed E.A.'s psychological evaluation in January and February of 2013. E.A. told Castleberry that her involvement with the Department was the result of being stopped by law enforcement who believed she was "drunk." E A. also stated that marijuana and Xanax were found in the car she was driving. E.A. further stated that she had taken her methadone that day at the prescribed dosage of 90 milligrams. E.A. had been taking methadone since 2008 and reported having anxiety and fatigue as a result of her efforts to detox from the methadone. When Castleberry evaluated E.A. in February of 2013, E.A. reported her dosage was 35 milligrams. Castleberry testified that detoxing off methadone would hinder E.A.'s parenting ability.

Jenise McCrea, the Department's case worker assigned to A.M.L.'s case, testified that she conducted a home visit with E.A. in May of 2013. E.A. was very disheveled and looked like she was sick. E.A. informed McCrea that she had decreased her methadone dosage to 16 milligrams

and "was having a bad experience." E.A. stated that she was hot and cold, not sleeping, and unable to work or dress herself. McCrea testified that E.A. is a danger to A.M.L. while she is on methadone because she attempts to decrease her dosage against her doctor's recommendations, noting, "she couldn't dress herself. So how would she be able to dress a three year old child. How would she be able to take care of a three year old child if her mental capacity or her emotional state is not where it needs to be."

McCrea testified that E.A. never accepted ownership of the incident at the McDonalds which led to her arrest. McCrea stated that E.A. endangered A.M.L. that night by driving with her under the influence. McCrea further stated that having drugs in the vehicle also endangered A.M.L. because A.M.L. could have placed the drugs in her mouth.

Because the record contained evidence of endangerment to A.M.L. other than the videotape of the field sobriety tests from the night of E.A.'s arrest, the record does not establish that the jury's findings turned on the admission of the videotape. Accordingly, assuming without deciding that the trial court erred in admitting the videotape and Captain Reyes's testimony into evidence, we hold the error, if any, was harmless. *In re S.P.*, 168 S.W.3d at 210; TEX. R. APP. P. 44.1.

## CONCLUSION

The trial court's judgment is affirmed.

Catherine Stone, Chief Justice