

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-18-00051-CV

IN THE INTEREST OF R.K.R., A CHILD

On Appeal from the County Court at Law No. 1
Randall County, Texas
Trial Court No. 70,180-L1, Honorable Jack M. Graham, Presiding

June 20, 2018

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PARKER, JJ.

The mother of R.K.R. appeals the trial court's order terminating her parental rights.[1]

We will affirm the order of the trial court.

Background

At the time of the final hearing in late 2017, the mother was 38 years old; R.K.R.

was eighteen months old.[2]  The Texas Department of Family and Protective Services

---

[1] To protect the child's privacy, we will refer to the parents as "the mother" and "the father" and the child by his initials.  TEX. FAM. CODE ANN. § 109.002(d) (West 2017); TEX. R. APP. P. 9.8(b).

[2] The parental rights of R.K.R.'s father also were terminated in this proceeding pursuant to his execution of an affidavit of voluntary relinquishment.  The father has not appealed.

became involved when R.K.R. tested positive for methamphetamine at the time of his birth, indicating the mother's use of the drug during pregnancy. The Department filed pleadings that included a petition against the mother seeking removal of R.K.R. The petition alleged several grounds and requested the infant's emergency removal. The court granted that relief and named the Department temporary sole managing conservator. R.K.R. was removed from the mother's care at the hospital. He was placed in a foster home with several of his cousins. He remained there at the time of the final hearing.

At the final hearing, the court heard evidence of the mother's twenty-year history of drug abuse and her struggle to maintain mental health. After hearing the evidence, the court took the matter under advisement. A final written order was subsequently signed, reflecting that the trial court terminated the mother's parental rights based on a finding that clear and convincing evidence showed the mother violated sections D, E, O and P of section 161.001(b)(1) of the Texas Family Code. TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O), (P) (West 2018). The court also found that clear and convincing evidence demonstrated that termination was in the child's best interest. TEX. FAM. CODE ANN. § 161.001(b)(2).

Appealing the order, the mother challenges the legal and factual sufficiency of the evidence supporting the predicate grounds on which the court terminated her rights. She also challenges the trial court's finding regarding the best interest of R.K.R. and the appointment of the Department as the child's permanent managing conservator.

Analysis

Standard of Review in Termination Cases

The Constitution protects "[t]he fundamental liberty interest of natural parents in the care, custody, and management" of their children. *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *Holick v. Smith,* 685 S.W.2d 18, 20 (Tex. 1985). Parental rights, however, are not absolute, and courts have recognized it is essential that the emotional and physical interests of a child not be sacrificed merely to preserve the parental rights. *In re C.H.,* 89 S.W.3d 17, 26 (Tex. 2002). The Due Process Clause of the United States Constitution and section 161.001 of the Texas Family Code require application of the heightened standard of clear and convincing evidence in cases involving involuntary termination of parental rights. *In re E.N.C.,* 384 S.W.3d 796, 802 (Tex. 2012); *In re J.F.C.,* 96 S.W.3d 256, 263 (Tex. 2002). Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. TEX. FAM. CODE ANN. § 101.007 (West 2017); *In re C.H.,* 89 S.W.3d at 25-26.

The Family Code permits a trial court to terminate parental rights if the Department proves by clear and convincing evidence that the parent committed an action prohibited under section 161.001(b)(1) and termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001(b)(2); *Holley v. Adams,* 544 S.W.2d 367, 370 (Tex. 1976). Only one predicate finding under section 161.001(b)(1) is necessary to support an order of termination when there is also a finding that termination is in a child's best interests. *In re A.V.,* 113 S.W.3d 355, 362 (Tex. 2003); *In re T.N.,* 180 S.W.3d 376, 384 (Tex. App.—Amarillo 2005, no pet.). Thus, a termination order may be affirmed if it is supported by

3

legally and factually sufficient evidence of any statutory ground on which the trial court relied for termination, and the best interest finding. *In re E.A.G.,* 373 S.W.3d 129, 141 (Tex. App.—San Antonio 2012, pet. denied).

The mother's appellate issues challenge the legal and factual sufficiency of the evidence supporting the court's termination order. Under the legal sufficiency analysis, we examine all of the evidence in the light most favorable to the challenged finding, assuming the "factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *In re J.F.C.,* 96 S.W.3d at 266. We disregard all contrary evidence the factfinder could have reasonably disbelieved or found incredible. *Id.* But, we take into account undisputed facts that do not support the finding, so as not to "skew the analysis of whether there is clear and convincing evidence." *Id.* If the record presents credibility issues, we must defer to the factfinder's determinations provided they are not unreasonable. *In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005).

In a factual sufficiency review, a court of appeals must give due consideration to the evidence the factfinder could reasonably have found to be clear and convincing. *In re C.H.*, 89 S.W.3d at 25. We determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id.* In doing so we consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *In re J.F.C.,* 96 S.W.3d at 266.

There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). But prompt and permanent placement of a child in a safe environment is also presumed to be in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a). The best interest analysis evaluates the best interest of the child, not that of the parent. *In re A.C.B.,* 198 S.W.3d 294, 298 (Tex. App.—Amarillo 2006, no pet.). The following factors are among those the court may consider in determining the best interest of the child: (A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interests of the child; (F) the plans for the child by these individuals or by the agency seeking custody; (G) the stability of the home or proposed placement; (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent. *Holley,* 544 S.W.2d at 371-72. The *Holley* factors "are not exhaustive; some listed factors may be inapplicable to some cases; other factors not on the list may also be considered when appropriate." *In re D.E.B.,* No. 07-15-00442-CV, 2016 Tex. App. LEXIS 5139, at *14 (Tex. App.—Amarillo May 13, 2016, no pet.) (mem. op.) (citing *In re C.H.*, 89 S.W.3d at 27).

Ground for Termination—Section 161.001(b)(1)(E)

Because only one statutory predicate ground is required to support termination, we will discuss only the sufficiency of the evidence demonstrating the mother committed acts described in section 161.001(b)(1)(E). *In re A.V.,* 113 S.W.3d at 362.

5

Parental rights may be terminated under paragraph (E) of section 161.001(b)(1) if there is clear and convincing evidence the parent engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical or emotional well-being of the child. The cause of the danger to the child may be proven by the parent's actions as well as by omissions or failures to act. *Doyle v. Texas Dep't of Protective & Regulatory Servs.,* 16 S.W.3d 390, 395 (Tex. App.—El Paso 2000, pet. denied). Additionally, paragraph (E) requires more than a single act or omission; a voluntary, deliberate and conscious course of conduct by the parent is required. *In re D.T.,* 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied). To endanger means to expose to loss or injury; to jeopardize. *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (citing *Texas Dep't of Human Services v. Boyd,* 727 S.W.2d 531, 533 (Tex. 1987)). It is more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, but it is not necessary that the conduct be directed at the child or that the child actually suffer injury. *In re M.C.,* 917 S.W.2d at 269.

Proof of Endangering Conduct by the Mother

On appeal, the mother argues the evidence is insufficient to show she allowed R.K.R. to remain in an environment with any person who would endanger him because the child was removed at birth. However, the record shows R.K.R. tested positive for methamphetamine at the time of his birth. The case law is clear that a mother's use of drugs during pregnancy may be conduct which endangers the physical and emotional well-being of the child. *In re S.M.L.D.,* 150 S.W.3d 754, 757 (Tex. App.—Amarillo 2004, no pet.) (citations omitted). The caseworker agreed R.K.R. had already been endangered by his mother's drug use during pregnancy. This evidence supports the trial court's finding the mother endangered the physical or emotional welfare of R.K.R. *Id. See also*

6

*In re S.H.*, No. 07-15-00177-CV, 2015 Tex. App. LEXIS 9731, at *5 (Tex. App.—Amarillo Sept. 16, 2015, no pet.) (mem. op.) (illegal drug use may support termination under subsection 161.001(b)(1)(E)); *In re M.L.B.*, 269 S.W.3d 757, 760 (Tex. App.—Beaumont 2008, no pet.) (*citing Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 84 (Tex. App.—Dallas 1995, no writ) (illegal drug use during pregnancy supports a finding the mother has engaged in conduct that endangers the physical and emotional welfare of the child)).

Termination under section 161.001(b)(1)(E) requires evidence of more than a single act or omission. *In re S.M.L.,*171 S.W.3d 472, 476 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Reviewing the record for evidence that a parent has engaged in the required course of endangering conduct, a court may consider conduct both before and after the child's birth. *In re S.P.*, 168 S.W.3d 197, 203 (Tex. App.—Dallas 2005, no pet.); *In re S.M.L.D.,* 150 S.W.3d at 757. The record here shows the mother has a twenty-year history of drug abuse including use of cocaine and methamphetamine, albeit with significant periods of sobriety. She has also been attending AA meetings since 1999. Several positive tests during the pendency of the Department's case show that the mother's drug usage continued despite treatment and counseling. She also lied to her counselor about one of those positive tests. A psychological evaluation indicated the mother's drug use was "suspected to be [more] prevalent" than the mother admitted. This pattern of behavior supports the trial court's finding the mother's course of conduct endangered the physical or emotional well-being of R.K.R. *Asjes v. Tex. Dep't of Protective & Regulatory Servs.*, 142 S.W.3d 363, 370 (Tex. App.—El Paso 2004, no pet.) (drug addiction and its effect on a parent's life and ability to parent may establish an endangering course of conduct). *See also In re S.R.,* 452 S.W.3d 351, 361-62 (Tex.

7

App.—Houston [14th Dist.] 2014, pet. denied) (continued illegal drug use after a child's removal is conduct that jeopardizes parental rights and may be considered as establishing an endangering course of conduct).

The mother's repeated denial of her use of illegal drugs emphasizes the knowing nature of her conduct. When the child tested positive at the hospital, the mother made the excuse that she took allergy medicine prior to R.K.R.'s birth, an explanation several witnesses found incredible. The mother later said her positive tests were due to the methamphetamine that "seeped into her walls and floor." The mother also downplayed her drug use during the psychological evaluation conducted after R.K.R.'s removal.

The mother's visits with R.K.R. were suspended in April 2017 because of her positive drugs tests. She did not see R.K.R. again because those visits were dependent on drug tests, and the mother failed to perform such tests. Lack of parental contact can negatively affect the child and, although there was testimony indicating R.K.R. and the mother were somewhat bonded, R.K.R. did not see the mother as his primary caregiver. *In re S.I.H.*, No. 02-11-00489-CV, 2012 Tex. App. LEXIS 2081, at *15-16 (Tex. App.—Fort Worth, March 15, 2012, no pet.) (mem. op.) (a parent's failure to regularly visit child during pendency of the case supports a finding of endangerment of the child's emotional well-being).

The record demonstrates sufficient clear and convincing evidence to allow the court reasonably to form a firm conviction or belief that the mother engaged in conduct that endangered the physical and emotional well-being of her child; legally sufficient evidence thus supports the court's finding under section 161.001(b)(1)(E). And, having undertaken the required exacting review of the entire record, *In re A.O.,* No. 07-16-00331-

CV, 2017 Tex. App. LEXIS 1838, at *4 (Tex. App.—Amarillo Mar. 3, 2017, pet. denied) (mem. op.) (citing *In re A.B.,* 437 S.W.3d 498, 500 (Tex. 2014)), we find the evidence also is factually sufficient. *In re J.F.C.,* 96 S.W.3d at 266 (standard for factual sufficiency).

We overrule the mother's first issue.

Best Interest

The mother also challenges the sufficiency of the evidence supporting the trial court's best interest finding. We will overrule her issue.

Most significant here is the mother's long history with drug abuse, that she consistently denied that conduct, that R.K.R. tested positive for methamphetamine at the time of his birth, and that the mother failed to remain sober during the pendency of the Department's case. That evidence, coupled with that showing the mother's inability to remain consistent with her medication to treat her mental health issues, supported the trial court's conclusion it was in R.K.R.'s best interest for the mother's parental rights to be terminated. *See In re E.C.R.,* 402 S.W.3d 239, 249 (Tex. 2013) (citing *In re C.H.,* 89 S.W.3d at 28) (evidence that supports one or more statutory predicate grounds for termination may be probative evidence that termination is in the child's best interest); *In re J.O.A.,* 283 S.W.3d 336, 346 (Tex. 2009) (trial court may consider a parent's history of drug use and irresponsible choices when making a determination to terminate a parent's rights).

The court heard evidence of the mother's struggle to deal with her mental health issues and her inconsistency in taking her medication. A psychological evaluation conducted after R.K.R.'s removal spoke to concerns over the mother's "long-standing mood disorder, which results . . . in episodes of poor judgment and recklessness, as well

9

as her personality structure, which seems to portend problems with relational engagement and management, and self-help decision making. These issues, combined with the substance abuse profile, which is quite long-standing, is of great concern from a child protection standpoint." The caseworker agreed that placing the child back in the mother's care would endanger his physical and emotional well-being, supporting the trial court's best interest finding.

The mother's psychiatrist testified at the final hearing, acknowledging that in his original psychiatric evaluation, he diagnosed the mother as "being bi-polar with a history of polysubstance abuse and manic, moderate without psychotic features." She also had a history of being suicidal and was hospitalized in 2013 and 2014. In sessions with her counselor in early 2017, the mother acknowledged her non-compliance with her medication. And, at some point during the case, the mother revoked her medical release so the Department could not verify her compliance with her medication. Other witnesses testified to concerns that the mother could not care for R.K.R. due to her "bipolar disorder and her being off of her medication."

The mother's psychiatrist testified that at the time of his initial evaluation in August 2017, the mother presented with almost "uncontrollable" anxiety and was "slightly in the hypomanic stage." The mother was not compliant with her medications at that time. At her second assessment in November 2017, the mother had "markedly improved" and, according to what the mother told the psychiatrist, was "fully compliant" with her medications. Friends of the mother testified at the final hearing, agreeing that the mother then appeared to be "compliant with her mental health meds."

10

The trial court well could have seen the evidence of the mother's inconsistency with her medications and the resulting instability and unpredictability as supporting a finding that termination was in R.K.R.'s best interest. *See In re N.T.,* 474 S.W.3d 465, 478-79 (Tex. App.—Dallas 2015, no pet.) (citation omitted) (inability of mother to remain medically compliant with respect to mental health is inconsistent with being able to provide a safe environment for children).

By the time of the final hearing, R.K.R. was eighteen months old. "When children are too young to express their desires, the fact finder may consider that the children have bonded with the foster family, are well-cared for by them, and have spent minimal time with a parent." *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.). R.K.R.'s foster mother is the ex-wife of the mother's brother. She has three other children, R.K.R.'s cousins, living at home. R.K.R. is bonded to his foster mother, grandmother and cousins. He is "very healthy" and doing "absolutely wonderful." The foster mother "loves" R.K.R. and desires to adopt him.

The mother attended visitation with R.K.R. until April 2017. During the visits, the mother was attentive and would bring toys and blankets. She would also sing to the child. Visitation stopped in April 2017 after the mother tested positive for methamphetamine. She did not see R.K.R. again because she did not provide a negative test. The trial court could have concluded it was in R.K.R.'s best interest to remain with his foster family. *See Holley,* 544 S.W.2d at 372 (emotional needs of the child now and in the future).

The mother testified to her plan if R.K.R. is returned to her. She told the court she moved to Paducah, Texas to be closer to family, had just obtained a job, was compliant with her medication, and was attending AA. She stated also that her parents were

providing her a house rent-free and paid for her car and car insurance. She arranged for state-paid day care. But witnesses testified the mother did not have stable employment and spent most of her time unemployed. Department witnesses testified the mother failed to advise the Department of her address in Paducah and consequently, they were unable to visit her current apartment or the home her parents were providing. The Department's plan for R.K.R. was for him to remain with his foster family and be adopted following termination of the mother's parental rights. Both the ad litem and the CASA representative told the court it was in the child's best interest that the mother's rights be terminated.

The record contains some evidence weighing against the trial court's best interest finding. However, evidence cannot be read in isolation but rather must be read in the context of the entire record. *In re K.L.,* No. 07-16-00236-CV, 2016 Tex. App. LEXIS 11989, at *12 (Tex. App.—Amarillo Nov. 4, 2016, no pet.) (mem. op.) (citation omitted). The record includes a bonding assessment conducted by a counselor that is largely favorable to the mother. Also, the mother completed a number of the services required in her service plan including a psychological evaluation, parenting classes, counseling and drug treatment. And, two of the mother's friends testified they thought the mother was capable of caring for R.K.R. when she is compliant with her medication. As noted, the mother testified she moved to Paducah to be closer to her family and told the court of her strong support system there.

However, the evidence gave the court reason to have doubt that the mother's relocation to Paducah was certain to remedy the risks to R.K.R. The mother's father testified he was unaware that the mother had tested positive for methamphetamine more than six times in the previous eighteen months. He also said it "would be a big problem"

12

if she continued to use drugs with a child in her care. The record also reflects limits to the mother's parents' ability to take responsibility for R.K.R. They declined to be considered for placement of the child initially and never requested placement.

Taking all of the factors and evidence of each into consideration, we conclude the trial court could have formed a firm conviction that termination of the mother's rights to R.K.R. was in the child's best interest.

We overrule the mother's second issue.

Appointment of Department as Managing Conservator

In her last issue, the mother re-urges her argument that the evidence was insufficient to support the trial court's findings under the predicate grounds and with regard to R.K.R.'s best interests. Rather, she asserts the evidence showed the child would have a stable, loving home life with his mother and her extended family. She contends the evidence was insufficient to support the trial court's appointment of the Department as the permanent managing conservator for R.K.R. The Department argues the mother's issue is subsumed by her other two issues and is therefore moot. We agree that the argument presented in the third issue is a reiteration of the mother's first two issues.

We review a conservatorship determination for an abuse of discretion and will reverse only if the decision is arbitrary and unreasonable. *In re J.A.J.,* 243 S.W.3d 611, 616 (Tex. 2007) (citation omitted). Texas Family Code section 161.207(a) provides in part that if the court terminates the parent-child relationship with respect to both parents or to the only living parent, the court shall appoint "a suitable, competent adult," the

Department, or a licensed child-placing agency as managing conservator of the child. TEX. FAM. CODE ANN. § 161.207(a).

Here, we have concluded the evidence presented at the final hearing was sufficient to support the trial court's findings under section 161.001(b)(1)(E) and 161.001(b)(2). There was no evidence presented to establish appointment of another suitable, competent adult as conservator of the child. The mother's argument against the trial court's appointment of the Department as the permanent managing conservator is thus without merit. *In re N.T.,* 474 S.W.3d at 481 (citations omitted).

We overrule the mother's third issue.

### Conclusion

Having resolved each of the mother's issues against her, we affirm the judgment of the trial court.

James T. Campbell
Justice
