COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-308-CV

IN THE INTEREST OF 

C.A.L., A CHILD 

------------

FROM THE 393RD DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Jennifer R. appeals the trial court’s order terminating her parental rights in her child, C.A.L.  In three issues, Jennifer asserts that the trial court abused its discretion in determining that Jennifer’s appeal is frivolous because there are four arguable bases for her appeal, and she contends that section 263.405 of the family code is unconstitutional for two reasons.  In six issues, Appellant Mary L., C.A.L.’s maternal grandmother who intervened in the case in the trial court, asserts that the trial court erred in ruling that her appeal is frivolous, and she contends that section 263.405 of the family code
(footnote: 2) is unconstitutional for five reasons.
(footnote: 3)  We affirm.

CONSTITUTIONAL CHALLENGES

Jennifer’s third issue and Mary’s sixth issue allege that the provision in section 263.405 requiring the trial court to determine whether an appeal is frivolous, which could involve a factual sufficiency review, violates the separation of powers clause of the Texas Constitution because it interferes with the power that courts of appeals are assigned under article V, section 6(a) of the constitution to decide factual sufficiency complaints.  
See
 
Tex. Const.
 art. II, §1; art. V, §6(a).  We have previously addressed this contention and held that the statute is not unconstitutional under the separation of powers clause of the Texas Constitution.  
See In re M.R.J.M.
, 193 S.W.3d 670, 676 (Tex. App.—Fort Worth 2006, no pet.) (en banc).  We overrule Jennifer’s third issue and Mary’s sixth issue.

Jennifer’s second issue alleges that section 263.405 is unconstitutional as applied to her in that it violates the equal protection clauses of the United States and Texas Constitutions.  Mary’s issues two through five allege that section 263.405 is unconstitutional because it violates the equal protection and due process clauses of the United States and Texas Constitutions.  We have previously held that these challenges have no merit.  
See In re K.D.
, 202 S.W.3d 860, 865 (Tex. App.—Fort Worth 2006, no pet.) (op. on reh’g); 
In re T.C. & G.C.
, 200 S.W.3d 788, 792 (Tex. App.—Fort Worth 2006, no pet.). Accordingly, we overrule Jennifer’s second issue and Mary’s issues two through five.

REVIEW OF THE TRIAL COURT’S FRIVOLOUS FINDINGS

In Jennifer’s first issue, she contends her appeal is not frivolous because  she was denied a jury trial, she received ineffective assistance of counsel, and the evidence is legally and factually insufficient to support the trial court’s findings that termination is in the best interest of C.A.L. and that Jennifer committed any of the grounds for termination found by the court.  In Mary’s first issue, she contends the trial court abused its discretion in striking her petition in intervention.  After Appellants' briefs were filed, we requested the court reporter and clerk to provide a full record of the termination trial.
(footnote: 4)
Standard of Review
 

The trial court found that both Appellants’ appeals were frivolous.  In determining whether an appeal is frivolous, “a judge may consider whether the appellant has presented a substantial question for appellate review.”  
Tex. Civ. Prac. & Rem. Code Ann.
 § 13.003(b) (Vernon 2002); 
Tex. Fam. Code Ann.
 § 263.405(d)(3) (incorporating section 13.003(b) by reference).  As we have previously held, it is well established that a proceeding is frivolous when it lacks an arguable basis either in law or in fact.  
In re K.D.
, 202 S.W.3d at 866.  We review a trial court’s finding of frivolousness under an abuse-of-discretion standard.  
Id.; In re M.R.J.M.
, 193 S.W.3d at 673.  To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable.  
Downer v. Aquamarine Operators, Inc.
, 701 S.W.2d 238, 241-42 (Tex. 1985), 
cert. denied
, 476 U.S. 1159 (1986).  Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred.  
Id
.

Termination is proper if the record establishes by clear and convincing evidence one or more of the grounds for termination enumerated in family code section 161.001(1) and that termination is in the child’s best interest.  
Tex. Fam. Code Ann.
 § 161.001 (Vernon Supp. 2006); 
In re J.L.
, 163 S.W.3d 79, 84 (Tex. 2005).  Clear and convincing evidence is defined as “
the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.”  
Tex. Fam. Code Ann.
 § 101.007 (Vernon 2002).

Jennifer’s Issue

In her first issue, Jennifer contends the trial court abused its discretion in finding her appeal to be frivolous.  Her issue presents four separate subparts.

I.  Denial Of Jury Trial

Jennifer alleges that the trial court erred and abused its discretion in denying her request for a jury trial.  Rule 216 of the Texas Rules of Civil Procedure provides,

No jury trial shall be had in any civil suit, unless a written request for a jury trial is filed with the clerk of the court a reasonable time before the date set for trial of the cause on the non-jury docket, but not less than thirty days in advance.

Tex. R. Civ. P.
 216.  We review the trial court's denial of a jury demand under an abuse-of-discretion standard.  
See Mercedes-Benz Credit Corp. v. Rhyne
, 925 S.W.2d 664, 666 (Tex. 1996).  In conducting an abuse-of-discretion review, we examine the entire record.  
See id.

The Texas Department of Family and Protective Services (the Department) filed its termination petition on February 4, 2004.  Jennifer's attorney, Jamie Beck, was appointed on October 25, 2004, when termination was announced by the Department as its goal.  On January 24, 2005, Beck was given notice by the Department of a final hearing date for February 1, 2005.  On that date, all the parties appeared and the court entered an order extending the dismissal date pursuant to section 263.401(c) of the family code.  
See
 
Tex. Fam. Code Ann.
 § 263.401(c).  In its February 23 order, the trial court extended the mandatory dismissal date to August 6, 2005 and set a date for a "FINAL HEARING" for June 7, 2005 at 9:00 a.m.  On June 2, 2005, Beck filed a request for jury trial on behalf of Jennifer.  On June 7, the trial judge was unavailable for trial, and on June 8 the court signed an order entitled "NOTICE OF TERMINATION HEARING," setting a hearing for July 1, 2005.  On June 30, Beck filed a motion to strike the nonjury setting, which motion was denied on July 1 immediately prior to commencement of the trial before the court.

At the postjudgment frivolousness hearing held pursuant to section 263.405(d)(3), Beck testified that on June 1, 2005 she became aware that the Department's goal had changed from reunification to termination.  However, on cross-examination she acknowledged that at the fifth permanency planning team meeting on May 17, 2005, she became aware that the attorney for the Department changed the Department’s goal to termination.

Beck agreed that, in the course of representing her client in this matter  she appeared at numerous court hearings and exchanged phone calls and emails with all of the parties involved between the time of her appointment on October 25, 2004 and the termination trial on July 1, 2005.  Beck acknowledged that she has handled numerous cases as a “child’s attorney” and handled “ten or under” cases representing parents in cases involving Child Protective Services (CPS).  She agreed she has substantial experience in these types of cases.  She understands that the facts in cases involving CPS may change dramatically and often quickly, and it was not a surprise to her that things changed in this case.  She further stated that she was aware that throughout the entire proceedings the ad litem attorney for C.A.L. and the CASA representative (the guardian ad litem for C.A.L.) consistently opposed reunification.  Additionally, Beck acknowledged that the goal of the Department’s attorney, but not necessarily the Department, was consistently termination, not reunification.

Amy Lord testified at the frivolousness hearing that she has been the attorney ad litem for C.A.L. from the inception of this case.  She stated that Beck was appointed to represent Jennifer in October 2004 because at that time the Department announced its intention to pursue termination.  In January 2005, the Department changed its goal to reunification, but on May 17, 2005 changed its goal back to termination.  Lord reaffirmed that her position as attorney ad litem for C.A.L. has consistently been that Jennifer’s parental rights should be terminated.

Jennifer contends this case is governed by the holding of 
Bell Helicopter Textron, Inc. v. Abbott
, 863 S.W.2d 139 (Tex. App.—Texarkana 1993, writ denied).  In 
Bell
, the court held that because Bell was not given the required forty-five days’ notice of the trial setting, it was impossible for Bell to comply with the requirements of rule 216.  
Id.
 at 140-41.  Although Jennifer contends that she received less than forty-five days’ notice of the trial setting, on February 23, 2005 the trial court entered an order notifying the parties that the case was set for “FINAL HEARING” on June 7, 2005.  Thus, in actuality Jennifer received over four months’ notice of the June 7 trial setting, and we find the holding in 
Bell
 is not applicable to these facts.

Jennifer’s attorney acknowledged that the petition filed by the Department on February 4, 2004 sought termination of Jennifer’s parental rights.  The termination petition was filed over sixteen months before the trial.  Although the Department at some point was working toward reunification of the family, as of May 17, 2005 Beck was aware that the Department’s goal was again termination of Jennifer’s parental rights.  Further, Beck was aware that throughout these proceedings the attorney ad litem and the guardian ad litem for C.A.L. had consistently opposed reunification.  Beck is an experienced family law attorney who has been extensively involved in the various meetings and discussions among the participants in this case.  Through her attorney, Jennifer received notice of the trial setting over four months before the setting.  Based upon these facts, we hold that the trial court did not abuse its discretion in denying Jennifer’s untimely request for a jury trial.

II.
  
Ineffective Assistance Of Counsel
 

Jennifer contends that her trial counsel was ineffective because she failed to timely request a jury trial.  To establish ineffective assistance of counsel in a parental rights termination case, the appellant must show by a preponderance of the evidence that her counsel’s representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel’s deficiency, the result of the proceeding would have been different.  
In re M.S.,
 115 S.W.3d 534, 549-50 (Tex. 2003)
 (citing 
Strickland v. Washington
, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984))
.
  As an appellate court, we must indulge in the “strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance.”  
Id.
 at 549 (quoting 
Strickland,
 466 U.S. at 689, 104 S. Ct. at 2065).

At the frivolousness hearing, Beck said she “screwed up” by not filing her request for a jury trial sooner.  When asked how her client was deprived of a fair trial by having the case heard by the court rather than a jury, Beck responded,

Because when you have twelve citizens over there who don’t come to this courthouse every day, hear evidence every day of criminals, CPS clients, et cetera, they have a different view and different life experiences than a sitting judge who is a former prosecutor and has been a sitting judge for a long time.  They are different.

However, Beck also testified that she did not believe that the trial judge was partial in any way and hoped that he was an impartial trier of the facts.  Beck agreed that to her knowledge there was not anything unfair in the process during the bench trial.  When asked whether there was anything she could point to about the non-jury procedure and the trial judge’s presiding over the trial that she felt deprived Jennifer of a fair trial, Beck responded “Not during the non-jury procedure, but just the denial.”  Beck acknowledged that she cross-examined witnesses, presented evidence and argument, and participated in the trial.  The record from the termination trial indicates that Beck actively participated in extensive cross-examination of all witnesses, voiced objections on Jennifer’s behalf when appropriate, and called witnesses to support Jennifer’s position.

Based upon the record before us, we hold that there is not a reasonable probability that, but for counsel’s alleged deficiency in not timely requesting a jury trial, the result of the proceeding would have been different.
 

III.
 
 Sufficiency Regarding Grounds For Termination
 

Jennifer alleges that there was legally and factually insufficient evidence to support the trial court’s findings that she committed acts that constitute grounds for termination under section 161.001.  Jennifer’s brief does not discuss or address how the evidence is insufficient regarding any of the four grounds for termination found by the trial court.

This termination proceeding was brought by the Department alleging fourteen separate grounds for termination of Jennifer’s parental rights.  
See
 
Tex. Fam. Code Ann.
 § 161.001(1).  The trial court found that there was clear and convincing evidence to support termination on the following grounds:

•  That Jennifer knowingly placed or knowingly allowed C.A.L. to remain in conditions or surroundings that endangered the physical or emotional well-being of C.A.L.;
(footnote: 5) 

•  That Jennifer engaged in conduct or knowingly placed C.A.L. with persons who engaged in conduct that endangered the physical or emotional well-being of C.A.L.;
(footnote: 6)

•  That Jennifer failed to support C.A.L. in accordance with her ability during a period of one year ending within six months of the date of the filing of the petition;
(footnote: 7)

•  That Jennifer has been convicted or has been placed on community supervision, including deferred adjudication community supervision, for being criminally responsible for the death or serious injury of a child under section 22.04 of the penal code.
(footnote: 8)

The clear-and-convincing-evidence standard is an intermediate standard that falls between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. 
 
In re G.M.
, 596 S.W.2d 846, 847 (Tex. 1980); 
In re K.W.
, 138 S.W.3d 420, 425 (Tex. App.—Fort Worth 2004, pet. denied).  It is defined as the “measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.”  
Tex. Fam. Code Ann.
 § 101.007.

The higher burden of proof in termination cases elevates the appellate standard of legal sufficiency review. 
 J.F.C.
, 96 S.W.3d at 265.  The traditional no-evidence standard does not adequately protect the parent's constitutional interests.  
Id. 
 In reviewing the evidence for legal sufficiency in parental termination cases, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the grounds for termination were proven.  
Id
. at 265-66.  We must review all the evidence in the light most favorable to the finding and judgment.  
Id.
 at 266.  This means that we must assume that the factfinder resolved any disputed facts in favor of its finding if a reasonable factfinder could have done so.  
Id.
  We must also disregard all evidence that a reasonable factfinder could have disbelieved.  
Id.
  We must consider, however, undisputed evidence even if it is contrary to the finding.  
Id.
  That is, we must consider evidence favorable to termination if a reasonable factfinder could, and disregard contrary evidence unless a reasonable factfinder could not.  
The City of Keller v. Wilson
, 168 S.W.3d 802, 827 (Tex. 2005).

This higher burden of proof also elevates the appellate standard of factual sufficiency review.  
In re C.H.
, 89 S.W.3d 17, 25 (Tex. 2002).  “[A] finding that must be based on clear and convincing evidence cannot be viewed on appeal the same as one that may be sustained on a mere preponderance.”  
C.H.
, 89 S.W.3d at 25.  In considering whether the evidence of termination rises to the level of being clear and convincing, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the grounds for termination were proven.  
Id
.  Our inquiry here is whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the parent violated 
any section 161.001(1) and that the termination of the parent’s parental rights would be in the best interest of the child.  
Id
. at 28.

The evidence at trial showed that on August 19, 2004, Jennifer pled no contest to the felony offense of injury to a child, C.A.L., and was placed on deferred adjudication community supervision for seven years.  The indictment alleged that the injury was caused by Jennifer grabbing or pulling C.A.L.’s arm on January 23, 2004.  C.A.L. was eleven months old
 at the time of the injury which resulted in her hospitalization on February 3, 2004.
(footnote: 9) 
 In entering her plea, Jennifer stipulated to the evidence to support her conviction.

At the termination trial, Jennifer testified that the injury may have occurred when she picked up C.A.L., whose arm got caught in the bars of her crib.  Dawn D. Johnson, M.D., a general pediatrics physician, testified 
that on February 3, 2004 she was called by the orthopedic surgeons at the children’s orthopedic clinic in the hospital to examine C.A.L.  Johnson stated that there are only two bones in a person’s forearm, and both of C.A.L.’s bones were broken.  The injury was “transverse,” meaning it was “through and through.”  Johnson’s medical report was introduced into evidence without objection; it stated that an x-ray revealed C.A.L. had “an angulated, right-sided, mid-shaft fracture of the ulna and radius without significant new bone formation meaning that it happened within the last 10 days.” 
 The report further stated that Jennifer reported that the injury must have occurred while C.A.L. was in her crib, but the physician concluded that C.A.L. was a victim of non-accidental trauma, that it is “extremely unlikely that these fractures happened while the child was sleeping in the crib,” that the “fracture occurred when the child was alone with the mother on the early morning of 1/24/04,” and that “[b]one fractures in children require a significant amount of force which does not happen in the daily activities of an 11-month-old.”  Johnson testified at the termination trial that there was a forty-degree angulation in the bone, and C.A.L.’s arm was disfigured.  In the operating room, C.A.L. had to be placed under general anesthesia so the doctors could manipulate the bones in her arm enough to align them.

Considering all of the evidence, we cannot say that the trial court abused its discretion by concluding that the evidence is such that a factfinder could reasonably form a firm belief or conviction that the finding that the allegation under section 161.001(1)(L) was true and that Jennifer’s challenges to the legal and factual sufficiency of the evidence regarding this finding are frivolous.  Therefore, the trial court did not abuse its discretion by concluding that Jennifer’s legal and factual sufficiency grounds are frivolous because they do not present a substantial question for appellate review.
(footnote: 10) 

IV.  Sufficiency Regarding Best Interest Of Child
 

Jennifer also alleges, again without elaboration, that there was legally and factually insufficient evidence to support the trial court’s finding that it is in C.A.L.’s best interest that Jennifer’s parental rights be terminated.
(footnote: 11)  
The CPS caseworker testified that based upon all the facts and circumstances of the case, the Department’s recommendation was that it would be in C.A.L.’s best interest for Jennifer’s rights to be terminated.  This was also the 
position of the attorney ad litem for C.A.L. and the CASA guardian ad litem.

Additionally, the CPS caseworker informed the court that the Department has a viable adoptive placement for C.A.L.  Faith
(footnote: 12) and her husband have been C.A.L.’s foster parents since February 5, 2004.  Faith testified that if Jennifer’s rights were terminated, Faith and her husband were willing to adopt C.A.L.  The CASA guardian ad litem informed the court that she had done a home study on Faith and her husband, and that CASA could endorse a future plan for them to adopt C.A.L.

Considering the factors that the trier of fact in a termination case may use in determining the best interest of the child,
(footnote: 13) 
and reviewing the entire record from the termination trial, we are unable 
to say that the trial court abused its discretion by concluding that the evidence is such that a factfinder could reasonably form a firm belief or conviction that it is in C.A.L.’s best interest that Jennifer’s parental rights be terminated and Jennifer’s challenges to the legal and factual sufficiency of the evidence regarding this finding are frivolous.  Therefore, the trial court did not abuse its discretion by concluding that Jennifer’s legal and factual sufficiency grounds regarding the best interest finding are frivolous because they do not present a substantial question for appellate review.

Having addressed all four subparts in Jennifer's first issue, we overrule her first issue.

Mary's First Issue

In her remaining issue, Mary contends the trial court erred in ruling that her appeal is frivolous.  Mary asserts the trial court abused its discretion in striking her petition in intervention; therefore, she claims that she has 
presented a substantial question for appellate review.

Rule 60 of the rules of civil procedure provides,

Any party may intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party. 

Tex. R. Civ. P.
 60.  Under this rule, a person or entity has the right to intervene if the intervenor could have brought the same action, or any part thereof, in her own name, or, if the action had been brought against her, she would be able to defeat recovery, or some part thereof. 
 Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.
, 793 S.W.2d 652, 657 (Tex. 1990).  Additionally, the version of section 102.004 of the family code in effect at the time Mary filed her petition in intervention provided that a grandparent may file an original suit requesting managing conservatorship if there is satisfactory proof to the court that the order requested is necessary because the child’s present environment presents a serious question concerning the child’s physical health or welfare
(footnote: 14)  The interest asserted by the intervenor may be legal or equitable.  
Guaranty Fed. Sav. Bank, 
793 S.W.2d at 657
.
  Although the trial court has broad discretion in determining whether an intervention should be stricken, it is an abuse of discretion to strike a plea in intervention if the intervenor meets the above test, the intervention will not complicate the case by an excessive multiplication of the issues, and the intervention is almost essential to effectively protect the intervenor's interest.  
Id.

Mary filed her petition in intervention on June 7, 2005, which was the original date scheduled by the court for the final hearing on the Department’s termination petition.  Mary sought to be appointed sole managing conservator of C.A.L.  The mandatory dismissal date for the Department’s termination petition was August 6, 2005.  On July 1, 2005, the trial court held a hearing on the Department’s motion to strike Mary’s petition in intervention.  At that hearing, Mary’s attorney argued that the petition in intervention was filed as soon as practicably possible after the Department’s goal changed from reunification to termination.  However, C.A.L.’s attorney ad litem and the Department’s attorney stated that Mary was aware that this litigation existed since the Department filed its termination petition fourteen months prior to filing her petition in intervention.

The CPS caseworker, Michelle Mense, testified that in March 2004 she spoke with Mary, who voiced an interest in a home study or becoming involved in the case.  However, Mary missed the appointment scheduled with Mense for the following week, and Mense never heard from Mary again; therefore, the home study was never pursued.

In February or March 2004, Mary moved to the state of Florida where she continued to reside at the time of trial.  She testified that she was under the impression until May 2005 that C.A.L. was going to be returned to Jennifer and that is why she did not file her petition for intervention sooner.  She stated that after completing her paperwork regarding the home study in March 2004, she contacted Kenneth Coleman, the person at the Department who was handling this matter, and he never returned her calls.  Mary stated that she never had an appointment to meet with the CPS caseworker.  Mary admitted that until June 2005 she never made any attempt to contact C.A.L.’s attorney ad litem, the District Attorney’s office, the CPS caseworker, or the CASA guardian ad litem. She acknowledged that she hasn’t attended any of the five permanency planning meetings, and the last time she saw C.A.L. was in February 2004, seventeen months prior to the hearing on her petition in intervention.
(footnote: 15)  Mary further admitted that until she filed her petition in intervention, she never requested that CPS schedule a visit with C.A.L.

At the July 1 hearing, the Department argued that because the case had to be tried by August 8 or the court would be required to dismiss the termination proceeding,
(footnote: 16) the Department had inadequate time and opportunity to investigate the appropriateness of Mary to be C.A.L.’s sole managing conservator.  Had Mary not missed her appointment with the CPS caseworker in March 2004, and had Mary maintained any sort of contact with the Department or the attorney ad litem or guardian ad litem, the Department would  have initiated proceedings to review any request made by Mary.  However, because the case was set for trial on July 8 and the mandatory dismissal date was August 6, there was no time for the Department to review the relief requested in Mary’s petition in intervention.  Mense testified that if a party lives out of state, the minimum time necessary to complete the proper investigation is six months.

Having considered the entire record, we are unable 
say that the trial court abused its discretion in striking Mary’s petition in intervention.  Therefore, the trial court did not abuse its discretion by concluding that Mary’s appeal was frivolous because it does not present a substantial question for appellate review. 
 We overrule Mary’s first issue.

CONCLUSION

Having overruled all of Jennifer's and Mary's issues, we agree with the trial court that any appeal would not present a substantial question for appellate review.  
See
 
Tex. Fam. Code Ann.
 § 263.405(d); 
Tex. Civ. Prac. & Rem. Code Ann.
 § 13.003(b).  Accordingly, we hold that the trial court did not abuse its discretion by concluding that Jennifer’s and Mary’s appeals are frivolous.  We affirm the trial court's determination that the appeals are frivolous.

PER CURIAM

PANEL F:  HOLMAN, 
DAUPHINOT, 
and GARDNER, JJ.

DELIVERED:
  February 15, 2007

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
The termination judgment was signed on July 26, 2005.  Appellants filed their separate notices of appeal on August 8, 2006.  The current version of this family code section became effective for appeals filed on or after September 1, 2005.  
Act of May 22, 2001, 77th Leg., R.S., ch. 1090, § 9, 2001 Tex. Gen. Laws 2395, 2396 (amended 2005) (current version at 
Tex. Fam. Code Ann.
 § 263.405 (Vernon Supp. 2006)).  Ther
efore, the former version of family code section 263.405 applies.  
See id.
  All references in this opinion to section 263.405 refer to the version that was in effect at the time Appellants filed their notices of appeal.

3:
Although some of the issues raised by Appellants were not presented to the trial court in their statements of the points on which each party intended to appeal, under the version of section 263.405 that applies to this appeal, Appellants are not limited to the points listed in their statements of points.  
See In re S.P.
, 168 S.W.3d 197, 201-02 (Tex. App.—Dallas 2005, no pet.) (op. nunc pro tunc); 
In re J.B.W.
, 99 S.W.3d 218, 221 (Tex. App.—Fort Worth 2003, pet. denied).

4:
The final volume of the reporter’s record was filed December 27, 2006.  

5:
Tex. Fam. Code Ann.
 § 161.001(1)(D).

6:
Id.
 § 161.001(1)(E).

7:
Id. 
§ 161.001(1)(F).

8:
Id.
 §
 161.001(1)(L).

9:
C.A.L. was born on February 27, 2003.

10:
Because we hold that the termination of Jennifer’s parental rights can be upheld under section 161.001(1)(L), we need not address whether the evidence could be sufficient to support termination under any of the other three grounds found by the trial court.  
See In re A.J.L.
, 136 S.W.3d 293, 305 (Tex. App.—Fort Worth 2004, no pet.). 

11:
Tex. Fam. Code Ann.
 § 161.001(2).

12:
For purposes of confidentiality, the trial court permitted the witness to use only her first name during the trial.

13:
See
 
Holley v. Adams
, 544 S.W.2d 367, 371-72 (Tex. 1976). 

14:
Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws, 113, 125 (amended 2005) (current version at 
Tex. Fam. Code Ann.
 § 102.004(a) (Vernon Supp. 2006)).

15:
C.A.L. has been in foster care since February 3, 2004.

16:
See
 
Tex. Fam. Code Ann.
 § 263.401 (Vernon Supp. 2006).